Staples, J.
An issue out of chancery is directed, in doubtful matters of fact, to satisfy the conscience of the court. It is not adopted as a substitute for omitted evidence, but in cases of doubt and difficulty produced by a conflict of testimony. In such cases, the chancellor considers the purposes of justice will be better attained by an investigation before a jury, where the witnesses may be seen by the triers of the fact, their capacity, deportment, accuracy and sources of information, subjected to the tests of a public cross-examination, and the whole merits of the controversy more satisfactorily investigated, than by an examination on paper in the *189 country. It is, therefore, the rule in most of the American courts, and also in the English courts, not to admit depositions taken in 'a Chancery court to be read to the jury, unless proof be given that the witnesses are dead, or abroad, or otherwise unable to attend the trial. This rule has received the sanction of the judges of this court in several cases, and is believed to be the settled practice in Virginia. I think, therefore, the court below committed no error in entering the order set out in plaintiff’s first bill of exceptions. Burwell v. Corbin, 1 Rand. 153; Douglas v. McChesney, 2 Rand. 109; Grigsby v. Weaver, 5 Leigh, 197; Cartright v. Godfrey, 1 Murphy, R. 422; 2 Daniel Ch. Prac. 741, mar. page.
The second assignment of error is to the refusal of the court to give the instruction set out in plaintiff’s second bill of exceptions. This instruction is objectionable in several respects. It is, however, only necessary to notice that part of it which asserts that “an answer positively denying the allegations of the bill may be overthrown by the admissions, evasions and contradictions, if any, which may be found therein.” It is sufficient to say that this proposition is in conflict with the rule announced in Fant v. Miller & Mayhew, 17 Gratt. 187. In that case, the court says, “a plaintiff cannot destroy the weight of’ the whole answer by proving that the defendant is unworthy of credit; nor can he do so by proving, directly or indirectly, that the answer is false in one respect, or ■ in several respects. The only effect of such proof being to destroy the weight of the answer to the extent to which it is disproved by that amount of evidence which is required by the rule in chancery.”
The instructions actually given by the court in lieu of that asked for by plaintiffs, I think, correctly state the principles of law governing this ease. The plaintiffs’ counsel, however, proposed the following additiou or modification of the instructions given: “But' so much of ’ the auswer of either party as makes in favor of'the- *190 respondent, may be disproved by its context, or by extrinsic evidence, and on the other hand, may be sustained by corroborating testimony.” The- court refused to make this addition, and I think properly. This language is an extract from the opinion of Judge Baldwin in Lyons v. Miller, 6 Gratt. 427. In using it, he had reference exclusively to an answer to a mere technical bill of discovery. It was the enunciation of an abstract proposition of law, having no application to the present case, or to any case of a bill for redress falling within the ordinary jurisdiction of a court of equity.
The court had already instructed the jury that an answer is to be taken as true when responsive, unless contradicted by two witnesses, or one witness with corroborating circumstances. The court was then asked to tell the jury in a general way, that an answer may be “ disproved by its context, or by extrinsic evidence.” The instruction not only involved a mere abstract proposition of law, which a judge may well refuse, but was well calculated to mislead the jury.
The plaintiffs also asked the court to instruct the jury, they are not bound by the rule of chancery pleading, which prescribes that the allegations of an answer responsive to the bill must be taken as true, unless contradicted by two witnesses, or one witness with corroborating circumstances. This instruction the court refused to give ; and the plaintiffs again excepted.
. The question presented by this instruction has never been decided by a court of the last resort in Virginia. In Thornton v. Gordon, 2 Rob. R. 719, Judge Allen said the rule in equity that the answer of a defendant denying the allegations of the bill must be taken as true, unless disproved by two witnesses, or one witness and circumstances, was so well established, the plaintiff' could not make his case an exception to it, by disclaiming a discovery from the defendant. This rule is the law of the forum, and all who apply to it for relief must submit *191 to have their causes tried according to its established modes of procedure. It has no application to a mere technical bill of discovery, where no relief is prayed, but the discovery is required to be used on some trial at law ; for there the plaintiff has his election to use the answer or not. The principle becomes of importance in those cases alone where an issue of fact is to be tried by the court.”
Eow it is obvious, that if the defendant is to be deprived of the benefit of this principle, because the issue is to be tried by a jury instead of the court, it is of very little value to him in many cases where its observance is most important to his interests. It is well settled that where the defendant denies in express terms the allegations of the bill, and the plaintiff* produces only one witness in support of them, the court will neither make a decree nor send the case to be tried at law, but simply dismiss the bill. If the jury may disregard this rule when the case is before them ; if they may find a verdict upon the testimony of a single witness in opposition to the answer, the plaintiff* will often succeed upon testimony insufficient to justify even the ordering of an issue.
What would a chancellor do with a verdict thus obtained? In this very case, had the instruction been given, and the jury found for the plaintiff*, under the ruling of the court, would he have been satisfied with the finding ? Upon a motion to set aside the verdict, he would have found himself trammelled by a rule he had instructed the jury they might disregard. In the nature of things the rule of evidence must be the same in each forum. Any other course of proceeding is calculated to produce endless confusion and difficulty.
The next error assigned is the refusal of the court to grant plaintiffs a new trial, upon the ground that the verdict was contrary to law and the evidence. The court refused to certify the facts, in consequence of a conflict of testimony. The bill of exceptions, however, *192 states all the oral evidence adduced at the trial. This court, having before it this evidence, all the depositions- and exhibits read at the hearing, is competent to decide Aether the purposes of justice require another trial to be had. The rule in such cases is well settled. Theeourfc will consider not merely whether the evidence adduced before the jury warrants the verdict, but also' whether, having regard to the whole case, further investigation is necessary to attain the ends of justice. And although there may have been a misdirection, or evidence may have been improperly rejected, it will not grant a new trial if the verdict appears to be right upon a consideration of all the evidence, including that which-was rejected. 2 Dan. Ch. Pr., new edition, page 1124, and cases there cited. In Barker v. Ray, 2 Rus. R. 63, Lord Eldon said: ‘‘This court, in granting or refusing-' new trials, proceeds upon very different principles from those of a court of law, and that it has been ruled over- and over again, if on an issue a judge refuse evidence which ought to have been received, or receive evidence which ought to - have been rejected, although in that case a court of law would grant a new trial, yet if this court is satisfied the verdict ought not to have been different, it will not grant a new trial merely upon such grounds. See also Hampson v. Hampson, 3 Ves. & Beam R. 41; Brockenbrough's ex’ors v. Spindle, 17 Gratt. 28.
In the present case, looking to the entire record, this court cannot say a different verdict ought to have been rendered—more especially as the chancellor who heard the witnesses is satisfied with the finding. When the case was before us at a previous term, an issue was-directed, mainly in consequence of the testimony of John E. Allen, upon whom the plaintiff chiefly relied to establish the charge of fraud. It is their misfortune that this-witness, in his examination before- the jury, has so explained his previous testimony as- to relieve the defendant of the burden of this charge. It may be,, as stated *193 in the petition, that the witness exhibited the most manifest bias in favor of the defendant, and, so far as he could, destroyed the effect of his deposition. This fact only establishes the failure of the plaintiff’s case, and that this witness’ evidence cannot, under any circumstances, be made the basis of a verdict or decree for them. What other testimony have the plaintiffs? Mrs. E. Leary, the sister of the female plaintiff, was examined before the jury. Her statements, however, related almost exclusively to an account of an interview between the witness, Allen, and Mrs. Powell, having but little bearing upon the matters in controversy. The deposition of Mrs. Powell was read at the hearing, but not on the trial before the jury; nor was she examined as a witness—why, the record does not disclose. Having declined to testify when there was the most urgent necessity for a full disclosure of the facts within her knowledge, she.. certainly cannot claim that the court shall regard her deposition in considering the motion for a new trial. But giving her the full benefit of her testimony, it does not prove the charge of fraud. The deposition is mainly devoted to a statement or narrative of the transactions which led to the execution of the bond. It proves that Mrs. Powell had great confidence in the defendant, Manson; but it does not show, or tend to show, that she executed the bond in controversy in consequence of fraudulent misrepresentations made by him. Upon the whole case, I am satisfied the verdict is correct, and that plaintiffs are not entitled to a new trial.
It only remains to notice an objection made to the form of the decree. It is true the decree is against the plaintiff, Powell. Provision is, however, made that the debt due by the garnishee, Sauer, shall be first applied to the satisfaction of defendant’s claim. It is conceded that this debt is more than sufficient for the purpose. But were it otherwise, the decree is still correct. It is-too plain for discussion, that upon the marriage the hus *194 band becomes responsible for all the debts of the wife contracted before the marriage. To what extent her separate estate may be subjected to such debts is not very well settled. 13ut it is clear that a mere ante-nuptial settlement will .not relieve the husband of the obligation cast upon him by the law, to discharge the debts of the wife, provided the claim is asserted, and the recovery bad during the existence of the coverture. This responsibility arises upon the marriage, and only ceases with its termination.
Dor these reasons, I am of the opinion the decree of the Chancery court should be affirmed.
The other judges concurred in the opinion of Staples, J.
Decree affirmed.