Christian J.
delivered the opinion of the court.
The court is of opinion that there is no error in the decree of the Circuit court of Alexandria county, so far as the said court decreed a specific performance of the agreement for the sale of certain real estate entered into between Isaac Eewton and John Eagle, Jr.
The bill and the undisputed facts in the record present a clear case for specific performance. The answer of the defendant does not resist a specific performance of the contract entered into between him and the plaintiff; but claims that he is entitled to compensation for damages sustained by him arising out of the acts of the plaintiff (Eewton) and his agents in interfering with the possession and enjoyment of the land bought by him of said Eewton. The defendant does not seek a recision of the contract; but expresses his willingness to perform it on his part, and his desire to have the same specifically executed whenever the court shall award to him compensation for the damages he has sustained in consequence of the acts of the plaintiff and his agents.
*819 The whole controversy in the case, which has been one of protracted and bitter litigation, is now narrowed down to the single point (as the case is presented before this court' of a claim on the part of the defendant, for compensation for damages sustained in consequence of the acts of the plaintiff and his agents.
The Circuit court of Alexandria decreed a specific performance of the contract between the parties; but refused to direct any enquiry as to the compensation claimed by the defendant; that court being of opinion that “ if Newton has interferred with Nagle’s possession and rights, either through the agency of Kurtz or otherwise ; if he has been the cause of personal loss to Nagle, or disturbed him in the enjoyment of his private or personal rights, he must seek redress in another forum.”
IJpon an appeal from this decree to the District court of the Fourth judicial district, held at Fredericksburg, that court, reversing to this extent only, the decree oí the. said Circuit court, was of opinion “ that the appellee, Isaac Newton, is liable to the appellant for any damages which may have been sustained by him arising from the acts of said Newton or his agents in interfering with the appellant’s possession and enjoyment of the land bought by him of said Newton, and that an account ought to be taken of the amount of any such damages; and the liability of said Newton therefor, ought to be enforced in this suit.” An appeal from this decree brings up the case to this court.
The court is of ¿pinion that there is no error in the decree of the said District court.
"While there is some conflict in the English cases, and in some of the American decisions, as to how far courts of equity will entertain bills for compensation or damages, except as incidental to other relief, it seems to be now well settled, that where a court of equity clearly has jurisdiction of the subject of the controversy, jurisdiction for compensation or damages will always attach where it is *820 | ancillary to the relief prayed for. 2 Story’s Eq., § 1798, 799, Ed. 1866.
The case before us does not come within the rule attempted to be settled in the conflicting decisions referred an(j reiie(j Up0n at the bar. The question in those cases, upon which the authorities are much divided, is whether a court of equity will hold jurisdiction of a case merely to make compensation to an injured party where it cannot give specific performance. In other words, is compensation within the power of equity only as an incident of, or collateral to, a specific performance, which would otherwise be inequitable, or can it decree compensation by itself, without reference to specific performance. There is very high authority, including the Supreme court of the United States, for the proposition, that courts of equity have this distinct and independent power of compensation. Pratt v. Law & al., 9 Cranch R. 456 ; Philips v. Thompson, 1 John. Ch. R. 131 ; Woodcock v. Bennet, 1 Cow. R. 711.
But many cases might be cited which hold the contrary doctrine, both in England and in the States of the; Union. See note (v.), 3 Parsons on Cont. 403.
It is not necessary in this case to attempt to reconcile these conflicting authorities. It is sufficient to remark that the cases referred to at the bar were generally cases where specific performance toas denied. And yet in many of these cases the jurisdiction of the court to make compensation and direct an issue quantum damnificatus was expressly affirmed.
But the case before us is one in which specific performance was decreed, and was manifestly a case in which specific performance ought to have been decreed. The court, therefore, having full and complete jurisdiction, and having properly exercised that jurisdiction in decreeing specific performance, the only question is, whether or not the court of chancery may not, as an incident to the relief sought, or collateral to the specific *821 performance, ydiich would otherwise be inequitable, direct an enquiry as to the damages which the defendant has sustained in consequence of the acts of the plaintiff or his agents; or whether the case must be retained in the court of chancery until the question of damages can be ascertained in another form, to wit: in a court of law.
As before intimated, we think the doctrine on this subject is now well settled, and may be succinctly stated to be this: that where the court of chancery has jurisdiction of the case, and where it is a case proper for specific performance, it may, as ancillary to specific performance, decree compensation or damages; and where the ascertainment of damages is essential, in order to do complete justice between the parties in the case before it, the court ought not to send the parties to [another forum to litigate their rights ; but should refer [the matter to one of its own commissioners, or direct an issue quantum damnificabas to be tried at its own bar. 2 Story Eq. Ed. 1866, §§ 798-9, note; Fry on Specific Performance, second Am. Ed. p. 448.
The last named author, treating of the subject under consideration, says: “In early times the courts did not entirely disclaim jurisdiction in respect of damages, where they were incident to the subject matter already in contention before the court. Subsequently, however, the jurisdiction was disowned, and a broad distinction ■set up between compensation and damages.” After some comments on a decision of Lord Eldon on this subject, he proceeds: “At present, however, the courts manifest an inclination to return to the original view of its jurisdiction, and to assist in the ascertainment of damages where these are essential to complete justice in the case before it.”
In a recent English case, Prothero v. Phelp, 25 Law Jour. ch. 105 (L. J. J.), Lord Justice Turner said: “That it is competent for this' court to ascertain dam *822 ages, I feel no doubt. It is the constant course of the court in the case of vendor and purchaser, where a sufficient case is made for the purpose, to make"enquiry as to the deterioration of the estate: and in so doing, the court is, in fact, giving damages to the purchaser for the-loss sustained by the contract not having been literally performed.”
It is impossible not to see the great propriety of courts of equity being clothed with such a jurisdiction ; so that in cases coming before them by way of specific performance, complete justice may be done to suitors, without their resorting to any other forum. Under the modern practice of courts of equity, aided by legislative enactment, these courts are now provided with all the machinery necessary to aid its jurisdiction to make an end of a cause properly before it. An issue out of chancery may now be tried at its own bar, instead of being sent (as formerly) to a court of law for trial. Oné manifest object of legislative changes in the administration of the law has been to enable courts of law and courts of equity to do complete justice in matters arising within their respective jurisdictions; and it is in entire accordance with this that courts of equity should proceed by way of damages in cases where they properly have jurisdiction, and where complete justice requires the payment of damages.
It is impossible, therefore, to perceive either the necessity or propriety, in a case like this (where the court has complete jurisdiction of the subject, and with all the parties before it, and where a specific performance has been decreed),1 of sending the parties before-another forum, in order to-litigate rights arising directly out of the subject before the court of chancery, and especially where specific performance would be inequitable, and complete justice could not be done without an adjustment of these questions. Why should the cause be divided into two suits—a part of the controversy to *823 be adjudicated iu a court of equity, and a part in a court of law ? Why should two distinct and independent tribunals be invoked to dispose of a cause between the same parties, where their respective claims are so connected as to be inseparable ? Why call upon a court of law to aid the court of equity, which has the undoubted original jurisdiction of the subject matter and of the parties, and is provided with all the machinery necessary to arrive at the same result, and in the same mode, if need be (trial by jury), which could be attained in a court of law ? We cannot perceive the necessity or the propriety of such a practice. Nor can we find any authority among the modern decisions to require it.
The cases relied upon by the learned counsel for the appellee, are cases where the plaintiff came into a court of equity seeking compensation in damages for alleged fraud, misrepresentation, &c., and where upon the face of his bill or in the case made out, there is no ground for equitable relief.
The case of Robertson v. Hogsheads, 3 Leigh, 723, so earnestly relied upon by counsel, is not in any respect opposed to the principles and practice of courts of equity as above expounded. In that case the bill in form and upon its face was a bill claiming damages for the breach of a contract. It did not ask even for a recision of the contract ; but the claim of the plaiutiff was merely for compensation in damages in consequence of certain alleged misrepresentations in respect to sufficiency of springs and their actual deficiency. It was argued by counsel in that case, that under the prayer for general relief he might claim a recision of the contract. Carr, J. says, “ Taking up the case either upon the bill and answer or upon the whole evidence, there is no ground furnished for a recision of the contract in any stage; but after it was executed by giving and receiving a deed, taking possession, paying good part of the purchase money, executing bonds for the balance, and a deed of *824 trust to secure the payment, there is not the shadow of a cause for a recision. The bill then, so far as it related to the main end of it, was never sustainable ; and taking aioay that ground there could be no propriety in filing a bill in equity for the sole purpose of obtaining compensation or damages for an alleged fraud, and to tie up a part of the purchase money until these damages were liquidated.”
Tucker, P. said in the same ease, “It is obvious, that no recision of the contract could have been decreed or properly asked for in this case. * * * As the form of the proceeding excludes the possibility of recision, the bill can only be looked on as a bill for an injunction to restrain the payment of an unpaid balance of purchase money until a claim for unliquidated damages for an alleged fraud shall have been settled by an issue to be directed by the court.” -
It will thus be readily perceived, that the case of Robertson v. Hogsheads, is not, in the slightest degree, in conflict with the doctrines herein announced. In that case there was no possible ground upon which the jurisdiction of a court of equity could attach. But it was a bill filed by a plaintiff merely for the purpose of recovering damages for the breach of a contract. In the ease before us the jurisdiction of a court of equity is unquestioned. The plaintiff files his bill for specific performance in a case where he is clearly entitled to it, and which is decreed by the court; and the defendant not objecting to specific performance, claims that he is entitled to compensation by way of damages arising from the acts of the plaintiff and his agents respecting the subject matter of the agreement. In such a case the court having obtained possession of the subject, it will do complete justice by disposing of the whole subject at its own bar, without sending the parties to another forum. This practice has been commended and established by numerous decisions of .this court. See Payne *825 v. Graves, 5 Leigh, 561; Billups v. Sears, 5 Gratt. 31; Lyons v. Miller, 6 Gratt. 427 ; Bank of Washington v. Arthur, 3 Gratt. 173; Martin v. Hall, 9 Id. 8.
It may be further observed, that there is au obvious distinction between eases where the party seeks relief in equity as plaintiff, and where compensation is sought by the defendant in resistance or modification of the plaintiff’s claim. In the latter case, the maxim prevails that he who seeks equity shall do equity. 2 Story’s Eq. § 799 (a). "Where a plaintiff in equity seeks the aid of the court to enforce specific performance, he can only receive such relief upon equitable terms; and if it would be inequitable to grant relief without compensation to the defendant (whether such compensation be by way of damages, or otherwise), it is competent for the court having possessed itself of the subject by proper exercise ■of its jurisdiction, to do complete justice between the parties ; and as ancillary to that purpose, may ascertain ■damages sustained by the defendant, either by an enquiry made by a master or by a jury upon an issue quantum damnificatus to be tried at its own bar.
We are therefore of opinion, that there is no error in the decree of the said District court, and that the same must be affirmed.
Decree or District court areirmed.